# EXHIBIT A

---

**Amended Complaint**

*Ragghianti v. Willson, et al.*

No. GD-25-005403 (Allegheny C.C.P.)

Filed August 14, 2025

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA
COVER SHEET

| | | |
|---|---|---|
| | : | CIVIL DIVISION |
| | : | |
| BLAKE RAGGHIANTI and DANIELLE RAGGHIANTI, his wife, Plaintiffs | : | Case No.: GD-25-005403 |
| v. | : | **AMENDED COMPLAINT IN CIVIL ACTION** |
| MARK J. WILLSON, EBBREZZA, INC., KINGFLY SPIRITS, LLC, GEORGE R. FARNETH, II., THE FARNETH LAW GROUP, LLC, NICHOLAS A. MILLER, and BRENLOVE & FULLER, LLC, Defendants | : | Filed on behalf of Plaintiffs, Blake Ragghianti, and Danielle Ragghianti |
| | : | Counsel of record for this Party: |
| | : | Timothy D. McNair<br>PA. I.D. #: 34304<br>tmcnair@mcnairlaw.com |
| | : | 821 State Street<br>Erie, PA 16501<br>Phone: (814) 452-0700<br>Fax: (814) 454-2371 |
| | : | |
| | | **JURY TRIAL DEMANDED** |

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| BLAKE RAGGHIANTI and DANIELLE RAGGHIANTI, his wife,<br>Plaintiffs<br>v. | Case No.: GD-25-005403 |
| MARK J. WILLSON, EBBREZZA, INC., KINGFLY SPIRITS, LLC, GEORGE R. FARNETH, II., THE FARNETH LAW GROUP, LLC, NICHOLAS A. MILLER, and BRENLOVE & FULLER, LLC,<br>Defendants | **JURY TRIAL DEMANDED** |

**NOTICE TO DEFEND**

TO: Mark J. Willson
c/o

Antoinette C. Oliver, Esquire
Henry W. Oliver Building 535
Smithfield Street, Suite 1300
Pittsburgh, PA 15222

Alexandra L. Yuill, Esquire
Meyer, Unkovic & Scott LLP
Henry W. Oliver Building 535
Smithfield Street, Suite 1300
Pittsburgh, PA 15222

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

LAWYER REFERRAL SERVICE
ALLEGHENY COUNTY BAR ASSOCIATION
400 KOPPERS BUILDING
436 SEVENTH A VENUE
PITTSBURGH, PA 15219
Telephone: (412) 261-5555
Email LRS@acba.org

Respectfully submitted,

MCNAIR LAW OFFICES, PLLC

By:______________________________

Timothy D. McNair, Esquire
Pa. ID#34304
821 State Street
Erie, PA 16501
(814) 452-0700
(814) 454-2371
tmcnair@mcnairlaw.com

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| BLAKE RAGGHIANTI and DANIELLE RAGGHIANTI, his wife, Plaintiffs | : | |
| v. | : | Case No.: GD-25-005403 |
| MARK J. WILLSON, EBBREZZA, INC., KINGFLY SPIRITS, LLC, GEORGE R. FARNETH, II., THE FARNETH LAW GROUP, LLC, NICHOLAS A. MILLER, and BRENLOVE & FULLER, LLC, Defendants | : | **JURY TRIAL DEMANDED** |

**NOTICE TO DEFEND**

TO: Ebbrezza, Inc.
c/o

Antoinette C. Oliver, Esquire
Henry W. Oliver Building 535
Smithfield Street, Suite 1300
Pittsburgh, PA 15222

Alexandra L. Yuill, Esquire
Meyer, Unkovic & Scott LLP
Henry W. Oliver Building 535
Smithfield Street, Suite 1300
Pittsburgh, PA 15222

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

LAWYER REFERRAL SERVICE
ALLEGHENY COUNTY BAR ASSOCIATION
400 KOPPERS BUILDING
436 SEVENTH A VENUE
PITTSBURGH, PA 15219
Telephone: (412) 261-5555
Email LRS@acba.org

Respectfully submitted,

MCNAIR LAW OFFICES, PLLC

By:______________________________

Timothy D. McNair, Esquire
Pa. ID#34304
821 State Street
Erie, PA 16501
(814) 452-0700
(814) 454-2371
tmcnair@mcnairlaw.com

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| BLAKE RAGGHIANTI and DANIELLE RAGGHIANTI, his wife,<br>Plaintiffs | : | |
| v. | : | Case No.: GD-25-005403 |
| MARK J. WILLSON, EBBREZZA, INC., KINGFLY SPIRITS, LLC, GEORGE R. FARNETH, II., THE FARNETH LAW GROUP, LLC, NICHOLAS A. MILLER, and BRENLOVE & FULLER, LLC,<br>Defendants | : | **JURY TRIAL DEMANDED** |

**NOTICE TO DEFEND**

TO: Kingfly Spirits, LLC
c/o

Antoinette C. Oliver, Esquire
Henry W. Oliver Building 535
Smithfield Street, Suite 1300
Pittsburgh, PA 15222

Alexandra L. Yuill, Esquire
Meyer, Unkovic & Scott LLP
Henry W. Oliver Building 535
Smithfield Street, Suite 1300
Pittsburgh, PA 15222

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

LAWYER REFERRAL SERVICE
ALLEGHENY COUNTY BAR ASSOCIATION
400 KOPPERS BUILDING
436 SEVENTH A VENUE
PITTSBURGH, PA 15219
Telephone: (412) 261-5555
Email LRS@acba.org

Respectfully submitted,

MCNAIR LAW OFFICES, PLLC

By:______________________________

Timothy D. McNair, Esquire
Pa. ID#34304
821 State Street
Erie, PA 16501
(814) 452-0700
(814) 454-2371
tmcnair@mcnairlaw.com

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| BLAKE RAGGHIANTI and DANIELLE RAGGHIANTI, his wife,<br>Plaintiffs | : | |
| v. | : | Case No.: GD-25-005403 |
| MARK J. WILLSON, EBBREZZA, INC., KINGFLY SPIRITS, LLC, GEORGE R. FARNETH, II., THE FARNETH LAW GROUP, LLC, NICHOLAS A. MILLER, and BRENLOVE & FULLER, LLC,<br>Defendants | : | **JURY TRIAL DEMANDED** |

**NOTICE TO DEFEND**

TO: George R. Farneth, II, Esquire
c/o

Brett W. Farrar, Esquire
Dickie McCamey
Four Gateway Center, 444 Liberty Ave, Suite 1000
Pittsburgh, PA 15222 1225

Steven Zoffer, Esquire
Dickie McCamey
Four Gateway Center, 444 Liberty Ave, Suite 1000
Pittsburgh, PA 15222 1225

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

LAWYER REFERRAL SERVICE
ALLEGHENY COUNTY BAR ASSOCIATION
400 KOPPERS BUILDING
436 SEVENTH A VENUE
PITTSBURGH, PA 15219
Telephone: (412) 261-5555
Email LRS@acba.org

Respectfully submitted,

MCNAIR LAW OFFICES, PLLC

By:______________________________

Timothy D. McNair, Esquire
Pa. ID#34304
821 State Street
Erie, PA 16501
(814) 452-0700
(814) 454-2371
tmcnair@mcnairlaw.com

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| BLAKE RAGGHIANTI and DANIELLE RAGGHIANTI, his wife, Plaintiffs | : | |
| v. | : | Case No.: GD-25-005403 |
| MARK J. WILLSON, EBBREZZA, INC., KINGFLY SPIRITS, LLC, GEORGE R. FARNETH, II., THE FARNETH LAW GROUP, LLC, NICHOLAS A. MILLER, and BRENLOVE & FULLER, LLC, Defendants | : | **JURY TRIAL DEMANDED** |

**NOTICE TO DEFEND**

TO: Farneth Law Group, LLC
c/o

| | |
|---|---|
| Brett W. Farrar, Esquire<br>Dickie McCamey<br>Four Gateway Center, 444 Liberty Ave, Suite 1000<br>Pittsburgh, PA 15222 1225 | Steven Zoffer, Esquire<br>Dickie McCamey<br>Four Gateway Center, 444 Liberty Ave, Suite 1000<br>Pittsburgh, PA 15222 1225 |

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

LAWYER REFERRAL SERVICE
ALLEGHENY COUNTY BAR ASSOCIATION
400 KOPPERS BUILDING
436 SEVENTH A VENUE
PITTSBURGH, PA 15219
Telephone: (412) 261-5555
Email LRS@acba.org

Respectfully submitted,

MCNAIR LAW OFFICES, PLLC

By:______________________________

Timothy D. McNair, Esquire
Pa. ID#34304
821 State Street
Erie, PA 16501
(814) 452-0700
(814) 454-2371
tmcnair@mcnairlaw.com

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| BLAKE RAGGHIANTI and DANIELLE RAGGHIANTI, his wife, Plaintiffs | : | |
| v. | : | Case No.: GD-25-005403 |
| MARK J. WILLSON, EBBREZZA, INC., KINGFLY SPIRITS, LLC, GEORGE R. FARNETH, II., THE FARNETH LAW GROUP, LLC, NICHOLAS A. MILLER, and BRENLOVE & FULLER, LLC, Defendants | : | **JURY TRIAL DEMANDED** |

**NOTICE TO DEFEND**

TO: Nicholas A. Miller, Esquire
c/o
Jamie L. Lenzi, Esquire
jlenzi@c-wlaw.com
Cipriani & Werner, P.C.
650 Washington Road, Suite 700
Pittsburgh, PA 15228

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

LAWYER REFERRAL SERVICE
ALLEGHENY COUNTY BAR ASSOCIATION
400 KOPPERS BUILDING
436 SEVENTH A VENUE
PITTSBURGH, PA 15219
Telephone: (412) 261-5555
Email LRS@acba.org

Respectfully submitted,

MCNAIR LAW OFFICES, PLLC

By:____________________________

Timothy D. McNair, Esquire
Pa. ID#34304
821 State Street
Erie, PA 16501
(814) 452-0700
(814) 454-2371
tmcnair@mcnairlaw.com

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| BLAKE RAGGHIANTI and DANIELLE RAGGHIANTI, his wife,<br>Plaintiffs | : | |
| v. | : | Case No.: GD-25-005403 |
| MARK J. WILLSON, EBBREZZA, INC., KINGFLY SPIRITS, LLC, GEORGE R. FARNETH, II., THE FARNETH LAW GROUP, LLC, NICHOLAS A. MILLER, and BRENLOVE & FULLER, LLC,<br>Defendants | : | **JURY TRIAL DEMANDED** |

**NOTICE TO DEFEND**

TO: Brenlove & Fuller
c/o
Jamie L. Lenzi, Esquire
jlenzi@c-wlaw.com
Cipriani & Werner, P.C.
650 Washington Road, Suite 700
Pittsburgh, PA 15228

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

LAWYER REFERRAL SERVICE
ALLEGHENY COUNTY BAR ASSOCIATION
400 KOPPERS BUILDING
436 SEVENTH A VENUE
PITTSBURGH, PA 15219
Telephone: (412) 261-5555
Email LRS@acba.org

Respectfully submitted,

MCNAIR LAW OFFICES, PLLC

By:____________________________

Timothy D. McNair, Esquire
Pa. ID#34304
821 State Street
Erie, PA 16501
(814) 452-0700
(814) 454-2371
tmcnair@mcnairlaw.com

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| BLAKE RAGGHIANTI and DANIELLE RAGGHIANTI, his wife,<br>Plaintiffs<br><br>v.<br><br>MARK J. WILLSON, EBBREZZA, INC., KINGFLY SPIRITS, LLC, THE FARNETH LAW GROUP, LLC, GEORGE R. FARNETH, II, BRENLOVE & FULLER, LLC, and NICHOLAS A. MILLER,<br>Defendants | Case No.: GD-25-005403<br><br>**JURY TRIAL DEMANDED** |

**<u>COMPLAINT IN CIVIL ACTION</u>**

NOW COME the Plaintiffs, Blake Ragghianti and Danielle Ragghianti, his wife, and for their Complaint against Defendants above-named respectfully represent:

1. This is a case under the Dragonetti Act, 42 Pa.C.S. 8351, et seq., arising out of the filing of a federal racketeering case against Plaintiffs under the Racketeer Influenced and Corrupt Organizations Act ("the RICO Case"), 18 U.S.C. § § 1961-1968. The RICO case was filed without probable cause, for an improper purpose, and has caused damage to the Plaintiffs for which they are entitled to compensation.

2. Plaintiffs are Blake Ragghianti ("Blake,") and Danielle Ragghianti, ("Danielle,") husband and wife, who at all relevant times resided in Allegheny County, Pennsylvania.

3. Defendant Ebbrezza, Inc.("Ebbrezza") is a Pennsylvania business corporation maintaining its office and principal place of business at 1 Pius Street, A5,

Pittsburgh, PA 15203. Ebbrezza is solely owned and operated by Mark Willson, its sole shareholder. Ebbrezza is a part owner of Defendant Kingfly Spirits, LLC.

4. Defendant Mark J. Willson ("Willson") is an adult individual residing at Pittsburgh, Allegheny County, Pennsylvania. Willson is the sole owner, president, secretary, and treasurer of Ebbrezza, Inc. At all relevant times, Ebbrezza was owned and controlled by Defendant Willson and functioned as the alter ego of Mark Willson.

5. Defendant Kingfly Spirits, LLC ("Kingfly,") is a Pennsylvania Limited Liability Company jointly owned by Plaintiff Blake Ragghianti and Defendant Ebbrezza, Inc. It maintains its registered address at 2613 Smallman Street, Pittsburgh, PA 15222.

6. Defendant Farneth Law Group, LLC, ("Farneth Law,") is a Pennsylvania Limited Liability Company maintaining its office and principal place of business at 445 Fort Pitt Boulevard, Suite 160, Pittsburgh, PA 15219. At all relevant times, Farneth Law was the alter-ego of Defendant George R. Farneth Esquire.

7. Defendant George R. Farneth, II, ("Farneth,") is an adult individual residing at Allegheny County, Pennsylvania. Farneth is the sole and controlling member of Defendant Farneth Law Group, LLC. Farneth at all relevant times was an employee and officer of Farneth Law Group, LLC and directly benefited from the revenue and profits of that company. At all relevant times, Farneth was acting as the agent, servant, or employee of Farneth Law.

8. Defendant Brenlove & Fuller, LLC ("Brenlove,") is a Pennsylvania Limited Liability Company maintaining its office and principal place of business at 401 Washington Avenue, Bridgeville, Allegheny County, Pennsylvania 15017. Brenlove employs Defendant Nicholas A. Miller, Esquire, who at all relevant times was acting as

the agent, servant, and employee of Brenlove and in the scope of his duties and authority.

9. Defendant Nicholas A. Miller ("Miller,") is an adult individual maintaining his office and principal place of business at Brenlove & Fuller, LLC, 401 Washington Avenue, Bridgeville, Allegheny County, Pennsylvania 15017. Defendant Miller is, and at all relevant times was, either a member or employee of Defendant Brenlove, and at all times relevant to the matters complained about herein, acting within the scope of his employment and authority as the agent, servant, or employee of Defendant Brenlove.

**FACTS**

10. From 2011, Blake worked to establish a distillery business. He engaged in education regarding the craft, including international travel and formal education. Blake developed a business plan, pro-forma financial statements, promotional materials, engaged in networking, volunteering, and building the brand. He lined up multiple investors. Blake developed multiple variations of spiced rum products, one of which later became "Bliss 1895 Spiced Rum," named after the founder of the Erie Yacht Club in Erie, Pennsylvania, established in 1895, which owns the recipe and trademark for that product. In 2013, Blake engaged the Caputo and Caputo law firm to obtain federal and state licenses to operate a small batch distillery and successfully obtained those licenses.

11. In 2015, Willson agreed to invest in the distillery business begun by Blake. As a condition for investment in Blake's distillery, Defendant Willson demanded that Ragghianti dissolve his company, 412 Distilling, which he did. Defendant Miller, representing Blake, formed a new LLC entity, "Port of Pittsburgh Distilling" equally

owned by Blake and Willson's alter ego, Ebbrezza, LLC, and composed the Operating Agreement executed at that time by Willson and Ragghianti.

12. On March 2, 2015, at the insistence of and under threats of litigation by the Pittsburgh Port Authority, Port of Pittsburgh Distilling changed its name to Kingfly Spirits, LLC ("Kingfly").

13. Blake worked to establish Kingfly as a successful business until February 2020, when Defendant Willson unilaterally locked Plaintiff Blake out of the business. At that time, the business was on the verge of substantial profitability, generating revenue in excess of one million dollars in a year. During this time, Blake invested his time, his skill, and his knowledge of the distilling process and creation of alcoholic spirits into bringing the nascent business into operation and profitability. Blake designed the business location and invested many hours of substantial manual labor in remodeling, initial tenant management and space transfer, demolition, demolition team hiring and management, initial infrastructure installation, brick pointing, address changes, and construction permitting, receiving only minimal payment for a small portion of manual labor performed by Blake himself as he continued to invest his own time and money into the building at Willson's demand in order to "make the business successful.".

14. During this time, Willson refused to respect the corporate structure of the business, refused to maintain appropriate records or participate in formal corporate meetings, and was disruptive of the operations of the business, dominating meetings with long discourses on irrelevant topics, bullying employees and driving them off, threatening dissolution of the company unless Blake accepted terms far outside the existing Operating Agreement, and verbally assaulting legal professionals whom Willson had asked Ragghianti to engage to draft a potential new operating agreement.

15. Once the business was becoming established and generating substantial revenue, Willson unilaterally excluded Blake from the business, terminating Blake's employment and locking him out of the business in February 2020, falsely claiming Blake "resigned" despite an email from Blake that same day requesting an official meeting, friendly negotiations regarding options for securing additional capital, including a line-of-credit, a realistic salary for Blake's time and efforts, at that point consistently between 60 and 80 hours a week in fulfilling numerous managerial positions in the company including General Manager, Distillery Manager, Product Development, Head Distiller, Maintenance, Bookkeeping, Construction and Change-Order Liaison with all relevant contractors, IT Development and Management, Social Media and Web presence development and management, Brand Development, and Legal Compliance, all while Mr. Willson enjoyed more than 100 days of vacation during this sensitive start-up period.

16. During this time period, Willson demanded significant changes in the ownership structure of Kingfly. He demanded that Blake, for no consideration, transfer to him three quarters of Blake's interest in the business, making Willson/Ebbrezza an 85% owner, leaving Blake with only 15%, and imposed severe non-competition provisions on Blake. He threatened to close the business if Blake did not sign the agreement.

17. Leading up to and at the time Willson chose to eliminate Blake's participation in the business and attempt to convert all Kingfly's assets to his own use, Willson repeatedly threatened Plaintiff Blake with "unaffordable" litigation, pointing out that with his wealth, he and his powerful New York attorneys could "crush" Blake with attorney's fees, that Blake "couldn't make it past the first billing cycle," and eventually

ruin Blake financially by having to continuously engage in litigation and pay legal fees, as well as blatant threats that he would ensure Blake's reputation would be ruined and he would "never be able to work in this city again." Willson did not claim any legitimate basis for legal action, only that he would litigate against Plaintiff beyond Plaintiff's ability to respond.

18. Due to the duress of these threats, Blake complied with Willson's demands. Blake received no consideration for executing the revised LLC agreement but signed only because Willson threatened to close the business completely if he did not.

19. Shortly after locking Blake out of the business, Willson, acting though his alter-ego LLC organizations, filed for an Emergency Injunction against Blake in the Allegheny County Court of Common Pleas alleging that Blake had locked it out of its website and social media accounts. The Judge entered an Order requiring Blake to turn over all passwords to the website and social media, and for Willson to return to Blake Blake's personalty still inside the Kingfly premises, and suggested parties mediate the dispute.

20. Blake fully complied with the order, promptly restoring Kingfly's access to its Facebook page and web site after removing references to himself. Kingfly has still not fully complied with the order to return Blake's personal property. Kingfly filed an amended complaint. It does not claim racketeering, or conspiracy by Blake in connection with any other defendant except David Klett, ("Klett") Blake's long-time personal attorney and advisor. The claims against Klett have been dropped in that case and he is no longer a defendant. Although there is no probable cause for the allegations raised by Farneth on behalf of Kingfly, Ebbrezza and Willson, the case involves different

allegations and different parties than this case, and remains pending. It is not the basis of Plaintiff's claim under the Dragonetti Act, described below.

21. Kingfly's accounting firm, which has never been paid for its accounting systems design, Point of Sale system, and implementation work, filed a lawsuit against Kingfly in the Erie County Court of Common Pleas seeking payment of its fees. Willson, acting through Defendants Farneth and Miller, joined Blake as a defendant in that suit, falsely alleging that Blake was engaged in a conspiracy with the accountant to submit a falsified bill, that Blake had hired the accountant without Kingfly's approval, that Blake had no right to hire the accountant (who had been the accountant for the business since 2013, prior to Willson's involvement), and had altered the financial records of the business, without specifically identifying any alterations or damage resulting from this falsely-alleged act) and re-alleging some of the same claims then pending in the Pittsburgh case. It contains no allegations of racketeering. Although there is no probable cause for the allegations against Blake raised by Farneth and Miller on behalf of Kingfly and Willson, the case remains pending, involves issues distinct from the claims in this case, and is not the basis of Plaintiffs' claim under the Dragonetti Act, described below.

22. After being locked out of Kingfly, Blake found work with, consulted for, and partnered with several other individuals and businesses to continue to engage in his craft, small batch distilling and manufacture of beverages. Blake worked with Jorge Gerlach and his company, ECHT, LLC, Conneaut Cellars Winery, and The Aging Room to continue to support himself and his family and intended to remain in the small-batch distillery business in Pittsburgh, in direct competition with Kingfly.

23. Despite the inability to provide any evidence or testimony to support the wild claims of Blake's misconduct in the State Court cases, and during a period of

supposed medical convalescence for which Mr. Farneth requested a continuance in the Allegheny County case, Willson, Kingfly, and Ebbrezza, acting through Farneth and Miller, filed a complaint in the United States District Court for the Western District of Pennsylvania (the "RICO Complaint") alleging that Blake, his wife Danielle, Justina Tushak, (the owner of the accounting company then suing Kingfly for unpaid fees in Erie County), Jorg Gerlach and his company, ECHT, LLC, David Klett, Blake's long time personal attorney, Gregg Threlkeld, Mark Zini, The Aging Room, LLC (the company owned by Threlkeld and Zini), the Erie Yacht Club (owner of the rights to one of Blake's spiced rum formulas and a label design for their private labeled product called Bliss 1895 Spiced Rum), and 10 other unnamed entities, constituted an organization engaged in racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 et seq., ("RICO Act") and that the organization had done great damage to Kingfly and Willson. The complaint sought damages of $1,513,218.00, requested that these damages be trebled under the RICO Act, and punitive damages, attorney's fees in the minimum amount of $200,000.00, and other relief jointly, severally, and individually against each defendant. The relief sought was distinct from that sought in the state court cases.

24. The RICO action was distinct from the state court actions because it relied on allegations of a pattern of racketeering conduct not alleged in the state court cases. While facts similar to the State Court actions were plead by Defendants in support of the RICO suit, the purpose of the RICO suit was, as Judge Bissoon noted, to leverage the vast potential penalties of the RICO Act to intimidate opponents and extract settlements

in cases with little merit, as occurred in the RICO case. As Judge Bissoon noted, the RICO statute is subject to abuse and found that the Defendants were abusing it.[1]

25. As Judge Bissoon noted, Defendants utterly failed to plausibly allege a RICO conspiracy, and there was no probable cause for RICO claims. Her ruling was not an adjudication of Defendants' various state court claims, which are, as noted above, distinct.

26. At the time they decided to file the RICO Case, Willson, Farneth, and Miller knew that there was no basis for it in that there was not sufficient evidence to constitute probable cause for the allegations that a corrupt organization existed, or that Blake was at the center of a corrupt organization. Farneth and Miller acted with gross negligence and either failed to inform Willson of the lack of a basis for the RICO claims, or they did inform Willson of this, and Willson insisted on proceeding anyway. At all relevant times, Farneth and Miller knew that Willson was acting with malice and without probable cause but proceeded anyway.

27. The RICO case was filed for an improper purpose. Willson, Kingfly, Ebbrezza, Farneth and Miller knew that they could achieve no substantial financial relief from Blake, as he was impoverished by virtue of his years of unpaid work and the need to defend himself in the state court cases. The RICO case was filed with the improper

[1] Judge Bissoon quoted at length from *DelRio-Mocci v. Connolly Props. Inc.,* 672 F.3d 241, 254 (3d Cir. 2012) (McKee, C.J., concurring):
[T]he very strength of RICO—its breadth—now diffuses its focus. RICO's treble damage provision has been seized upon to convert the statute into a hodgepodge of prohibitions that now function as a tripwire that offers the lure of treble recovery to all who can squeeze their claim into some combination of RICO's 'predicate acts.' The civil penalties in RICO have thus been transformed into a fulcrum that is used to pry treble damages out of causes of action originating in divorce, trespass, legal and accounting malpractice, inheritance among family members, employment benefits and sexual harassment by a union. . . . In fact, most of the civil suits filed under the statute have nothing to do with organized crime; **they are garden-variety civil fraud cases of the type traditionally litigated in state courts**.

purpose of excluding Blake from engaging in the small batch distillery business in Pittsburgh, as well as satisfying Willson's malice against Plaintiffs and to further impoverish Plaintiffs with the costs of defending the multiple seven-figure claims made against them.

28. To defend against the ruinous racketeering claims being made by Kingfly, Willson, Farneth, Miller, and Ebbrezza, Blake and Danielle retained the services of Ralph Monico, Esquire of the Burns White law firm in Pittsburgh to defend them.

29. After the filing of the RICO Case, Defendants removed the two other cases from Allegheny County and Erie County to federal court despite there being no legal rationale for doing so and even though there are strict time and jurisdictional limits on removal of cases to federal court, including a prohibition on a Plaintiff removing its own case to federal court. The removal was done in flagrant violation of law and for the improper purpose of further impoverishing Plaintiffs and complicating and extending the RICO case. The improper joinder resulted in significant additional expense to Plaintiffs.

30. The defendants in the Allegheny County and Erie County cases filed Motions to remand those cases, which were granted by presiding United States District Judge Cathy Bissoon in a sharply worded Opinion on November 14, 2022, warning Farneth and Miller specifically to be mindful of the rules requiring complaints to be supported by fact and supported by law. The cases were remanded to the Courts of Erie and Allegheny Counties, but the Judge's warning fell upon deaf ears.

31. At that point, Defendants had already filed two amended complaints in the RICO Case attempting to allege the existence of a racketeering organization, and had

extracted small settlements from Zini, Threlkeld, The Aging Room, ECHT, Jorge Gerlach (despite filing a request for a default judgment against Gerlach while the settlement offer was pending, which the court refused), the Erie Yacht Club, and Conneaut Cellars Winery.

32. Plaintiffs were damaged by Kingfly and Willson's settlement with the Aging Room, which purported to require the Aging Room to turn over to Kingfly a significant quantity of spirits and packaging materials owned by Blake, which he had purchased after Willson terminated Blake's employment with Kingfly and for which Blake personally paid.

33. Plaintiffs were damaged by Defendants' settlements with The Aging Room, Jorg Gerlach, ECHT, LLC, Erie Yacht Club, Conneaut Cellars Winery, and Mark Zini because they agreed to not work with Blake in the future in exchange for being released from the potentially ruinous RICO case, even though there was no basis for the claims against them. This deprived Blake of the opportunity to profitably engage in his craft and acted to discourage other distillers from working with Blake for fear they would be subjected to the same treatment. It was calculated to preclude Blake's participation in the small-batch distillery business in the Pittsburgh area, to benefit defendants Willson, Ebbrezza and Kingfly.

34. Defendants have, despite reasonable request, refused to disclose the terms of those agreements. The agreements did not involve any of the state court cases, in which the settling parties are not named.

35. Blake, Danielle, Tushak, and Klett filed motions to dismiss the RICO case due to its legal insufficiency in that no facts were alleged that would bring Willson's

allegations under the umbrella of the RICO Act. Defendants responded by filing several new iterations of the complaint but still failed to allege the existence of a racketeering organization within the meaning of the RICO Act because no such organization existed.

36. On September 25, 2023, Judge Bissoon dismissed the RICO Case filed by Defendants in a stinging Opinion, chastising Farneth and Miller and their clients for attempting to steamroll Blake, Danielle, and the other RICO Case Defendants with the threat of ruinous damages. Specifically, Judge Bissoon stated: "…although connections among and between certain of the Defendants/entities are described, there are no plausible allegations of relationship, writ large, such that an enterprise of racketeering may be found. In the same vein, while the "structure" requirement is not formalistic, there are no plausible allegations of a structure of any kind." (Opinion, U.S.D.C., W.D. Pa., No 22-50E, 9/25/2023, P. 6) (Attached as Exhibit "A.") Judge Bissoon's decision established that there was no probable cause for the filing of the RICO case.

37. The Second Amended RICO complaint contained fourteen counts. Of these, twelve are based exclusively on federal law not pleaded in any of the state court cases. A count of defamation under state law was pleaded but was dismissed in connection with the dismissal of the RICO case. A count for Replevin under state law was also set out in the Second Amended RICO complaint and was also dismissed. Although the state law claims were dismissed without prejudice, Defendants took no action to transfer them to state Court, and the statute of limitations for those claims has long since expired. 42. Pa.C.S. §5103 *et seq*. No probable cause has ever been offered for those claims, they have been dismissed in Plaintiffs' favor and are no longer pending.

38. While defending themselves against the wrongfully filed complaint and the illegal attempt to combine the state court cases with it, which was rejected, Blake and Danielle incurred attorney's fees in the amount of $93,122.50.

39. As a further result of the filing of the RICO Act case, Plaintiff Blake's relationships with his prospective business associates were ruined since they were sued simply because they chose to work with Blake after he was locked out of Kingfly and they had to agree not to work with him as a condition of avoiding the expense and danger of litigation.

40. Other businesses are subject to the threat posed by Willson, Farneth, Kingfly, Ebbrezza and Miller that they would also be baselessly sued if they associated with Blake. As Judge Bissoon stated: "Essentially, every individual or entity to have touched upon the business dealings between Willson, the investor - and Ragghianti, the alleged fraudster - are claimed to have engaged in a widespread agreement to commit racketeering. No entity to have 'crossed' Willson, or to have acted in a way counter to his interests, appears to have been spared." (*Id.*, P. 4)

41. Despite the dismissal of the RICO case, it continues to damage Blake's reputation and has impaired his ability to find new employment. Any internet search engine search for Blake's name prominently displays links to the RICO racketeering suit filed against Blake by Defendants. Since most employers will at least perform a search engine search of a prospective employee, they become informed of the Defendants' accusations that Blake is a racketeer, and a reading of the Bissoon opinion does not clear the matter up as the Judge was required to accept the wild and baseless claims pleaded by Defendants as true, even though they were wildly speculative and unsupported. Whether there is any basis for those claims remains to be seen but is irrelevant to this

case. This damage is ongoing and will likely follow Blake for the rest of his life if there is not a clear court ruling to the effect that the RICO allegations were without foundation that will appear in a search engine search of Blake's name.

42. As a further result of the filing of the RICO case, Plaintiffs were subjected to great mental and emotional strain and anguish and suffered damages that would be expected to arise from a potentially ruinous, baseless legal claim and intense litigation in a federal court. The RICO case aggravated the mental anguish and suffering the Plaintiffs were already enduring as the result of the state court cases and was intended by Willson to do so.

43. As set forth above, Willson, through email, text, and in person meetings, specifically and maliciously threatened Blake with litigation that he could not afford, and on February 15, 2020 at 10:11 PM, a few days after excluding Blake from Kingfly, texted "Game on," his final communication with Blake before filing the Allegheny County lawsuit, meaning that he would act on the threat to drag Blake into endless and unaffordable litigation.

44. Farneth and Miller were always aware that no RICO Act conspiracy or organization existed and proceeded to bring the case for their wealthy client to assist in his malicious plan to financially ruin Blake and Danielle, impair Blake's ability to compete in the small batch distillery business in Pittsburgh, as well as to collect substantial fees from the Willson entities. As Judge Bissoon noted, "Plaintiffs' counsel appear willing to ask for anything, of any court, at any time; and they often do not appear to concern themselves with whether their requests enjoy support in the law." As well as "Counsel's questionable litigation tactics are not limited to the preexisting state court cases (one of which was initiated by Kingfly, itself). Counsel also previously

requested, with no legal support, the entry of an unnoticed TRO to seize disputed property (barrels of spirits)…" (Opinion, U.S.D.C., W.D. Pa., No 22-50E, 9/25/2023, P. 2, 3)

45. At no time did any Defendant have a reasonable basis to believe that the allegations in the RICO Act Complaint supported a valid claim under the existing or developing law. As Judge Bissoon stated, the RICO Act is increasingly viewed by federal courts as subject to abuse. Willson did not provide any evidence of racketeering to Farneth and Miller. Willson's malicious animus toward Blake was well known to Farneth and Miller. At all times, Farneth and Miller were aware that Willson was motivated by malice and by Wilson's plan to exclude Blake from the small batch distillery business in Pittsburgh and adopted Willson's malice as their own.

46. At no time did any Defendant have any reasonable basis to believe that the RICO claims were brought for any purpose other than maliciously injuring the Plaintiffs and their future business prospects. As Willson stated, he intended to financially ruin the Plaintiffs and to insure that Blake "never works in this town [Pittsburgh] again."

47. The actions of the Defendants, individually and collectively in initiating the RICO Case were malicious, instituted for the improper purposes of financially ruining Blake and Danielle and unfairly precluding Blake from competing in the small batch distillery business in Pittsburgh, and were an attempt to seize an unfair advantage in the various other cases they filed against them, constituted outrageous conduct, and support a claim for punitive damages.

48. To recover the harms and losses caused by the filing of the RICO case, Plaintiffs were required to retain counsel on a contingency fee basis, which will reduce their recovery if not compensated for in the award in this case.

**COUNT I – BLAKE RAGGHIANTI AND DANIELLE RAGGHIANTI vs. ALL DEFENDANTS - WRONGFUL USE OF CIVIL PROCEEDINGS UNDER THE DRAGONETTI ACT, 42 Pa.C.S. §8351 et seq.**

49. Plaintiffs incorporate by reference the averments of the preceding paragraphs of the Complaint as though fully set forth at length.

50. The acts of the Defendants, acting together, violated the Pennsylvania Wrongful Use of Civil Proceedings Act (the "Dragonetti Act") 42 Pa.C.S. Sec 8351 *et seq*. in that the suit filed was not supported by facts constituting probable cause, was brought for an improper purpose, deliberately calculated to inflict harm on Plaintiffs, and was terminated in Plaintiffs' favor based on a lack of probable cause.

51. As a result of the intentional and malicious actions of the Defendants, Plaintiffs have suffered the damages set forth above.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, jointly, severally, and individually, in an amount in excess of the jurisdictional limit for mandatory arbitration, together with their costs, interest, attorneys' fees, punitive and exemplary damages, and such other and further relief as the court deems just.

**TRIAL BY JURY OF TWELVE DEMANDED**

## COUNT II – BLAKE RAGGHIANTI AND DANIELLE RAGGHIANTI vs. MARK J. WILLSON, EBBREZZA, INC., AND KINGFLY SPIRITS, LLC – ABUSE OF PROCESS

52. Plaintiffs incorporate herein by reference the preceding averments of this Complaint as though fully set forth at length.

53. The filing of the RICO case by Defendants Willson, Kingfly and Ebbrezza was intended for a purpose for which the RICO Act was not designed, to reduce or eliminate competition.

54. Specifically, Willson, Kingfly, and Ebbrezza intended, by including as defendants in the RICO case all of the entities with whom Blake had done any business, to eliminate Blake as a competitor in the small batch distillery business in Pittsburgh by securing agreements from those defendants that they would not work with Blake in the future, and to put the local industry on notice that any association with Blake would likely result in ruinous if unfounded litigation.

55. As a result of the abuse of the litigation process by Willson, Ebbrezza, and Kingfly, Plaintiffs suffered the damages described above.

56. The actions of Defendants Willson, Ebbrezza and Kingfly were malicious, intended for an improper purpose, and justify an award of punitive damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants Mark J. Willson, Ebbrezza, Inc., and Kingfly Spirits, LLC, jointly, severally, and individually, in an amount in excess of the jurisdictional limit for mandatory arbitration, together with their costs, interest, attorneys' fees, punitive and exemplary damages, and such other and further relief as the court deems just.

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

Timothy D. McNair, Esquire

Respectfully submitted,

MCNAIR LAW OFFICES, PLLC

By:

Timothy D. McNair, Esquire
821 State Street
Erie, PA 16501
(814) 452-0700
(814) 454-2371 (fax)
tmcnair@mcnairlaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KINGFLY SPIRITS, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 22-50E |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| BLAKE RAGGHIANTI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Defendants' Motions to Dismiss (Docs. 117, 125, 129 & 132) will be granted, Plaintiffs' civil RICO claims will be dismissed and the Court will decline to exercise supplemental jurisdiction over the state law claims.

The length and breadth of the operative pleadings notwithstanding,[1] the dispute in this case – at its core – is quite simple. Plaintiff Mark Willson invested over $1 million in a business venture involving the manufacture and sale of craft liquors. The star to which he hitched his wagon was Blake Ragghianti, who − according to the pleadings – falsely "held himself out as a master distiller, who extensively studied and apprenticed with distillation processes in Italy." 2d Am. Compl. at ¶ 49. To say that Willson has been dissatisfied with his investment would be an understatement. Plaintiff alleges that Ragghianti engaged in widespread fraud and

1 Plaintiffs' Second Amended Complaint (Doc. 101) spans 74 pages, containing 440 paragraphs.

EXHIBIT

A

embezzlement. *See generally id.* at ¶ 119.[2]

This business dispute has resulted in preexisting, and ongoing, parallel state court proceedings, in Allegheny County (GD 20-002719) and Erie County (12021-2020). Plaintiffs attempted to "remove" the 2020 Allegheny County case to this Court. They could not do so, given that a plaintiff cannot remove its own case. *See* Order dated Nov. 14, 2022 in Civil Action No. 2:22-cv-00409-CB (noting that counsel's "positions appear to reflect fundamental misunderstandings regarding federal subject matter jurisdiction, the removal process and litigating in federal court more generally," and issuing a caution under Rule 11). Counsel's attempt to remove the Erie County action met a similar fate. *See* Order dated Nov. 14, 2022 in Civil Action No. 1:22-cv-00086-CB (rejecting Kingfly's bid to "federalize[]" the $38,000 collections-action filed by its former accountant, Tushak/Tugirls, and again cautioning counsel under Rule 11). Although this Court has not endeavored to master the state court dockets, those cases are proceeding parallel to this action, as evinced by Plaintiffs' recent Motion for a Protective Order, which was summarily denied. *Compare* Doc. 165 (seeking relief here, in conjunction with state court proceedings) *with* text-Order at Doc. 166 (explaining that "[t]he Motion addresse[d] filings and litigation in state court cases that [were] not before this Court," and indicating that "[r]elief regarding the state case(s) must be sought in the court(s) in which they [were] pending").[3]

---

[2] Joining Willson as Plaintiffs are Ebbrezza, a company of which he is sole owner; and Kingfly, the entity into which Willson's investments were "poured" (pun acknowledged). Willson now has a controlling interest in Kingfly. Given that the core dispute is between Willson and Ragghianti, the Court at times will refer to Willson as Plaintiff, with Ebbrezza's and Kingfly's interests being implicit.

[3] Counsel's questionable litigation tactics are not limited to the preexisting state court cases (one of which was initiated by Kingfly, itself). Counsel also previously requested, with no legal support, the entry of an unnoticed TRO to seize disputed property (barrels of spirits), *see* text-

The clear overlap with state court litigation aside, this Court must assess the sufficiency of Plaintiffs' federal claims. The proposed basis for federal jurisdiction is civil RICO, and Defendants' Motions to Dismiss challenge the sufficiency of such allegations.

While a review of the docket in this case suggests otherwise, what is alleged here is deceptively simple. Essentially, every individual or entity to have touched upon the business dealings between Willson, the investor − and Ragghianti, the alleged fraudster − are claimed to have engaged in a widespread agreement to commit racketeering. No entity to have "crossed" Willson, or to have acted in a way counter to his interests, appears to have been spared. The alleged collaborators include:

- David S. Klett, who has acted as counsel for Ragghianti (and, it appears from the pleadings, made the seemingly regrettable decision to become involved in Ragghianti's/Willson's/Kingfly's business adventures), *see* 2d Am. Compl. at ¶¶ 85, 150(a);

- Justina Tushak and Tugirls, who performed bookkeeping, accounting and tax services for Kingfly, and who claim not to have been paid, *compare id.* at ¶ 310 *with* discussion *supra* re 1:22-cv-00086-CB;

- Danielle Ragghianti, Mr. Ragghianti's wife, *see* 2d Am. Compl. at ¶ 10;

- Jörg Gerlach, and ECHT, who accepted products from Ragghianti at or around the time the feud came to fruition, *see id.* at ¶ 136;

- Conneaut Cellars, Inc., and Joal Wolf, proposed sellers of Kingfly's products, *see id.* at ¶¶ 17, 25(a) and 65;

- Former Defendant Erie Yacht Club, putative assignee and seller of a liquor recipe, *see id.* at ¶¶ 19, 86, 106;

---

Order at Doc. 28; and they sought the entry of default judgment against a party with whom they were in ongoing settlement negotiations. *See* Order at Doc. 135. While Plaintiffs' counsel have offered explanations as to the latter, upon which this Court has not opined, one thing remains clear: whether related to levels of diligence, competence or zealousness, Plaintiffs' counsel appear willing to ask for anything, of any court, at any time; and they often do not appear to concern themselves with whether their requests enjoy support in the law.

- Former Defendants The Aging Room, and its principals Gregg Threlkeld and Mark Zini, holders and sellers of subject liquor(s), *see id.* at ¶¶ 20, 25(b);

- Russ Thompson, CEO of DB Consultants, Inc., role unidentified, *see id.* at ¶ 25(c);

- Harvey Downey, President and CEO of NaviTek Machining Corporation, role unidentified, *see id.* at ¶ 25(d);

- Timothy Davis, Director of Special Projects at PANTHERRx Specialty Pharmacy, role unidentified, *see id.* at ¶ 25(e); and

- James D. Chiafullo, Esq., shareholder at Dentons Cohen and Grigsby, role unidentified, *see id.* at ¶ 25(f).

Whether the result of litigation strategy, paranoia or both,[4] all of these actors are alleged to have entered into a grand RICO enterprise, to engage in a pattern of racketeering.

Numerous courts and commentators have expressed concerns regarding the arguable overbreadth of the civil RICO statute, and the resultant threat of abuse:

> [T]he very strength of RICO—its breadth—now diffuses its focus. RICO's treble damage provision has been seized upon to convert the statute into a hodgepodge of prohibitions that now function as a tripwire that offers the lure of treble recovery to all who can squeeze their claim into some combination of RICO's 'predicate acts.' The civil penalties in RICO have thus been transformed into a fulcrum that is used to pry treble damages out of causes of action originating in divorce, trespass, legal and accounting malpractice, inheritance among family members, employment benefits and sexual harassment by a union. . . .
> In fact, most of the civil suits filed under the statute have nothing to do with organized crime; **<u>they are garden-variety civil fraud cases of the type traditionally litigated in state courts</u>**.

---

[4] *Compare* Willson's Doc. 142 (complaining that certain Defendants have submitted "unsolicited statement[s]" in state court and here "call[ing] into question Mr. Willson's mental health and wellbeing via false statements related to [his] personal and professional life") *with* Order at Doc. 144 ("[w]hile Mr. Willson may not like . . . characterizations of his mental status and motivations, these things may happen when a party appears in a public forum to air his disputes," and "[t]he potential for the 'airing of dirty laundry,' . . . is expanded, the more parties are being sued and the broader the claims pursued by the complaining party").

DelRio-Mocci v. Connolly Props. Inc., 672 F.3d 241, 254 (3d Cir. 2012) (McKee, C.J., concurring) (citations to quoted and other sources, alterations and internal quotations omitted, emphasis added).

This is such a garden variety case. Or, at least, it is presently being litigated as such in the parallel state actions. The question that remains is whether the civil RICO claims should persist. They should not.

To assert an association-in-fact enterprise, Plaintiffs are required to *plausibly* allege "the existence of an enterprise structure," *i.e.*, "something more than the fact that individuals were all engaged in the same type of illicit conduct during the same time period." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 370 (3d Cir. 2010) (citation to quoted source omitted). Otherwise, "the RICO statute's allowance for association-in-fact enterprises becomes an open gateway to the imposition of potentially massive costs on numerous defendants, regardless of whether there is even a hint of the collaboration necessary to trigger liability." *Id.*[5]

74 pages and 440 paragraphs of content notwithstanding, the Second Amended Complaint is bereft of connective tissue plausibly establishing an "enterprise structure" tying together the various actors. The amazing breadth of the claimed association(s) results in Plaintiffs' own undoing. While the pleadings contain ad nauseam assertions of legal conclusion, in the guise of factual averment, there are no plausible allegations establishing that the numerous individuals and entities acted together as a RICO "enterprise."

Along the same lines, Plaintiffs fail to make plausible allegations regarding a "structure" of the alleged association. Although the Supreme Court in Boyle v. U.S., 556 U.S. 938 (2009)

---

5 Although the various Defendants' arguments for dismissal differ, at least some of them challenges the sufficiency of Plaintiffs' association-in-fact allegations. *See* Doc. 118 at 9-13; Doc. 133 at 10-12. The Court, therefore, does not reach the issue sua sponte.

Case 1:22-cv-00050-CB Document 71 Filed 09/25/23 Page 6 of 8

clarified that the structure requirement is neither rigid nor formalistic, *some sort of structure* still is required. In re Ins. Brokerage Antitrust Litig., 618 F.3d at 366-67. In addition to, or as a corollary of, the existence of structure, the enterprise must have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 366.

In this case, the only "purpose" plausibly alleged is the targets' having acted in a way contrary to Willson's interests. And although connections among and between certain of the Defendants/entities are described, there are no plausible allegations of relationship, writ large, such that an enterprise of racketeering may be found. In the same vein, while the "structure" requirement is not formalistic, there are no plausible allegations of a structure *of any kind*.[6]

In sum, Plaintiffs have failed to level plausible allegations of an association-in-fact, or of structure. These shortcomings are fatal to their claims under Section 1962(c). Their claims under Section 1962(b), which address the use of racketeering to acquire control over an enterprise, also fail. Here, the enterprise alleged is an association-in-fact, and the 1962(b) claim merely reiterates the Section 1962(c) claim. Ferguson v. Moeller, 2016 WL 1106609, *4 (W.D. Pa. Mar. 22, 2016) (citation to binding authority omitted). The claim, on its face, is deficient. *See id.*[7]

[6] Previous iterations of the law required that the enterprise be "an entity separate and apart from the pattern of [illicit] activity in which it engages." Gary Miller Imports, Inc. v. Doolittle, 2020 WL 7027483, *6 (W.D. Pa. Nov. 30, 2020) (citation to quoted source omitted). Plaintiffs definitely would fail the "distinctness" requirement. To be sure, there has been a majority-trend recognition that the distinctness requirement did not survive *Boyle* and later cases. Nevertheless, the lack of distinctness dovetails with Plaintiffs' failure to plausibly allege any kind of structure. At bottom, the only structure to be discerned is, if you crossed Willson, you were part of the racketeering enterprise.

[7] Plaintiffs' references to subsections (a) and (d) go nowhere. Subsection (a) is "directed at halting the investment of racketeering proceeds into legitimate businesses, including the practice

As may be deduced from the discussions above, the Court believes that this matter fairly may be viewed as a "poster child" regarding the concerns associated with the civil RICO statute. Whether and how to put "the genie back in the bottle" is for Congress to decide. What concerns the Court is whether the RICO claims should proceed. For the reasons explained above, they should not, and Plaintiffs' federal claims will be dismissed.[8] The instant ruling also prevents this Court, and the state courts, from having to grapple with the intractable difficulties presented by Plaintiffs' efforts to litigate their disputes in parallel state and federal actions.

For reasons that should be obvious, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. Also, dismissal of the federal claims will be with prejudice for two reasons. First, on the basis of futility. Second, and independently, because Plaintiffs already twice have amended their pleadings, and they were expressly advised

---

of money laundering." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1188 (3d Cir. 1993) (citation to quoted source omitted). Having failed to plausibly allege the existence of a RICO enterprise, Plaintiffs cannot proceed under this theory. Weir v. Cenlar FSB, 2018 WL 3443173, *8 (S.D.N.Y. Jul. 17, 2018). Furthermore, the Court of Appeals for the Third Circuit has rejected such claims where plaintiffs "fail to explain how [they were] injured by the use or investment of racketeering income[,] as opposed to the racketeering acts themselves." Lightning Lube at 1188 (emphasis added). In this case, the purported injuries cannot be parsed. *Compare, e.g.*, 2d Am. Compl. at Count VIII (alleging that Ragghianti and his company used RICO proceeds to compete with Kingfly) *with* Lightning Lube (rejecting similar allegation that defendant used proceeds "to eliminate [the plaintiff] as a competitor"). Subsection (d) is not actionable absent a viable claim under subsections (a), (b) or (c). Giovinazzo v. Deangelo, 2022 WL 795713, *8 (D. N.J. Mar. 16, 2022) ("No underlying offense, no conspiracy to commit one.") (citation to quoted and other sources omitted).

[8] Plaintiffs' other purported bases for federal jurisdiction are easily dispensed with. They have failed to plausibly allege that any of the applicable types of damage under 18 U.S.C. § 1030 can be traced to Defendants' alleged activity. *See* Steinhardt v. Bernardsville Police Dep't, 2021 WL 3929321, *4 n.6 (3d Cir. Sept. 2, 2021). Nor are Plaintiffs' passing references to trade secrets sufficient to state a claim under 18 U.S.C. § 1836. Plaintiffs' primary thesis lies in the civil RICO statute. They cannot achieve, through boilerplate incantations of Sections 1030 and 1836, what eludes them under Section 1962.

that "they must make last, best efforts at amendment, because the Court [did] not anticipate granting further leave to amend." *See* text-Order at Doc. 88.

Consistent with the foregoing, Defendants' Motions to Dismiss (**Docs. 117, 125, 129 & 132**) are **GRANTED**, and the federal claims are **DISMISSED WITH PREJUDICE**. Judgment under Rule 58 will be entered forthwith, and the case marked closed.

IT IS SO ORDERED.

September 25, 2023

s/Cathy Bissoon
Cathy Bissoon
United States District Judge

cc (via ECF email notification):

All Counsel of Record

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| BLAKE RAGGHIANTI and DANIELLE RAGGHIANTI, his wife,<br>Plaintiffs<br><br>v.<br><br>MARK J. WILLSON, EBBREZZA, INC., KINGFLY SPIRITS, LLC, GEORGE R. FARNETH, II., THE FARNETH LAW GROUP, LLC, NICHOLAS A. MILLER, and BRENLOVE & FULLER, LLC,<br>Defendants | Case No.: GD-25-005403 |

**VERIFICATION**

The undersigned, hereby verifies that the information contained in the foregoing Amended Complaint is true and correct, not based on my personal knowledge, but upon information supplied to me by the Plaintiff, and is made subject to the penalties described at 18 Pa C.S.A. § 4904 regarding unsworn falsification to authorities. This verification is provided for convenience and a verification by the Plaintiff will be supplied if requested.

8/14/2025
Date

Timothy D. McNair, Esquire

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

BLAKE RAGGHIANTI and DANIELLE RAGGHIANTI, his wife,
Plaintiffs

v.

MARK J. WILLSON, EBBREZZA, INC., KINGFLY SPIRITS, LLC, GEORGE R. FARNETH, II., THE FARNETH LAW GROUP, LLC, NICHOLAS A. MILLER, and BRENLOVE & FULLER, LLC,
Defendants

Case No.: GD-25-005403

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Amended Complaint was sent by electronic mail and/or mailed by First Class U.S. mail, postage prepaid on this 14th day of August, 2025:

Jamie L. Lenzi, Esquire
jlenzi@c-wlaw.com
Cipriani & Werner, P.C.
650 Washington Road, Suite 700
Pittsburgh, PA 15228

Brett W. Farrar, Esquire
BFarrar@dmclaw.com
Steven Zoffer, Esquire
szoffer@dmclaw.com
Dickie McCamey
Four Gateway Center, 444 Liberty Ave,
Suite 1000
Pittsburgh, PA 15222 1225

Antoinette C. Oliver, Esquire
ACO@MUSLAW.com
Alexandra L. Yuill, Esquire
aly@muslaw.com
Henry W. Oliver Building
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222

Respectfully submitted,

MCNAIR LAW OFFICES, PLLC

By: ______________________________

Timothy D. McNair, Esquire
Pa. ID#34304
821 State Street
Erie, PA 16501
(814) 452-0700
(814) 454-2371
tmcnair@mcnairlaw.com